No. 19-10466

IN THE UNITED STATES COURT OF APPEALS
FOR THE NINTH CIRCUIT

UNITED STATES OF AMERICA
Plaintiff-Appellee,

v.

ERIC STAGNO
Defendant-Appellant.

On Appeal from the United States District Court
for the Eastern District of California

Honorable Troy L. Nunley
U.S. District Judge

United States District Court No. 2:17-cr-163-TLN

---

# OPENING BRIEF OF APPELLANT

---

Heather E. Williams
Federal Defender
Douglas J. Beevers
Assistant Federal Defender
801 "I" Street, 3rd Floor
Sacramento, California 95814
Telephone: (916) 498-5700

Attorneys for Defendant-Appellant
ERIC STAGNO

## Table of Contents

Table of Authorities ........................................................................................ iii

I. Jurisdictional Statement ..........................................................................1

II. Bail Status ...........................................................................................2

III. Statement of Issues Presented for Review ...............................................3

1. Did the District Court err by failing to give the defense instructions which were a correct description of the law not covered by any other instructions? ..........................................................................................................3

2. Is 38 C.F.R. §1.218(b) facially unconstitutional? ..........................................3

IV. Statement of the Case ...........................................................................3

A. Statement of Facts ....................................................................................3

B. Procedural History ....................................................................................7

V. Summary of the Argument ........................................................................8

VI. Argument ............................................................................................11

A. The Trial Court erred in refusing Mr. Stagno's jury instructions ................11

1. Standard of Review ...................................................................................11

2. The District Court erred by failing to give the defense instructions which were correct description of the law not covered by any other instruction.12

B. The Trial Court Erred in Denying Defendant's Rule 29 Motion to Dismiss, because the regulation was unconstitutional as applied to the conduct alleged in the Government's case in chief. ............................................20

1. Standard of Review ...................................................................................20

2. Argument. .................................................................................................20

VII. Conclusion ..........................................................................................22

## Table of Authorities

### Federal Cases

*Auer v. Robbins*,
519 U.S. 452, 462, 117 S.Ct. 905, 137 L.Ed.2d 79 (1997) ..................................19

*Bowles v. Seminole Rock & Sand Co*.,
325 U.S. 410, 414 (1945)……………………………………………………..19

*Chicago v. Blakemore*,
15 Ill App 3d 994, 305 NE2d 687 (1973) ..............................................................17

*City of Houston v. Hill*,
482 U.S. 451, 461, 107 S.Ct. 2502, 2505, 96 L.Ed.2d 398, 412 (1987)..............15

*H.N.P. v. State*,
854 So. 2d 630 (Ala. Crim. App. 2003)..................................................................17

*Lewis v. City of New Orleans*,
415 U.S. 130, 94 S.Ct. 970, 39 L.Ed.2d 214 (1974)…………………………15, 21

*Martinez v. District of Columbia*,
987 A.2d 1199 (D.C. 2010)…………………………………………………...17

*Norwell v. Cincinnati*,
414 U.S. 14, 94 S.Ct. 187, 38 L.Ed.2d 170 (1973)………………………………15

*Preminger v. Principi*,
422 F.3d 815, 824 (9th Cir. 2005)..........................................................................13

*R.A.V. v. City of St. Paul*,
112 S.Ct. 2538 (1992) ............................................................................................13

*Stinson v. United States*,
508 U.S. 36, 38, 113 S.Ct. 1913, 1919 (1993).......................................................19

*Terminiello v. Chicago*,
337 U.S. 1, 4, 69 S.Ct. 894, 895, 93 L.Ed. 1131 (1949)…………………….15, 21

*Thomas Jefferson Univ. v. Shalala*,

512 U.S. 504, 512-513, 114 S.Ct. 2381, 129 L.Ed.2d 405 (1994) .................... 19

*United States v. Anguiano-Morfin*,

713 F.3d 1208, 1209 (9th Cir. 2013)......................................................... …..11

*United States v. Marguet-Pillado*,

648 F.3d 1001, 1006 (9th Cir. 2011)................................................................. 12

*United States v. Ward*,

989 F.2d 1015 (9th Cir. 1992) ........................................................................ 11

*Virginia v. Black*,

123Ct. 1536, 1540, 538 U.S. 343, 346 (2003) .................................................. 13

**Statutes**

Title 18 United States Code
§3231 ..........................................................................................................1

**Federal Rules and Regulations**

Federal Rule of Appellate Procedure 4 ...................................................................... 1
Title 38 Code of Federal Regulations
§1.218(a) ............................................................................................. passim
Responding to Disruptive Patients,
75 FR 69881-01, 2010 WL 4603311(F.R.) ................................................ passim

No. 19-10466

IN THE UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff-Appellee,<br><br>v.<br><br>ERIC STAGNO,<br><br>Defendant-Appellant. | D.C. No. 2:17-cr-0163-TLN<br><br>Eastern District of California, Sacramento<br><br>APPELLANT'S OPENING BRIEF |

## I. Jurisdictional Statement

On September 7, 2017, ERIC STAGNO (hereinafter "Mr. Stagno") was charged by information with one Class A misdemeanor count of forcibly assaulting a United States Government employee in violation of 18 U.S.C. §111 and one class B misdemeanor count of disorderly conduct at a Veterans Administration medical facility in violation of 38 C.F.R. §1.218(a)(5) and (b)(11). ER 359, CR 10[1]. The district court had jurisdiction over the case under 18 U.S.C. §3231, over allegations on August 29, 2017 in the Eastern District of, and this Court has jurisdiction over this direct appeal from a final district court criminal judgment under 28 U.S.C. §1291. The United States Magistrate Judge entered the judgment on May 30,

[1] Throughout this brief "ER" refers to Excerpts of Record, and "CR" refers to the District Court Clerk's Record.

2018, and Mr. STAGNO filed his timely notice of appeal on June 5, 2018. ER 24, 7, CR 70-71, 90. Mr. Stagno's first appeal was processed to the Ninth Circuit as 18-10210, but then remanded to the district court which the parties agreed had intermediate jurisdiction, pursuant to 18 U.S.C. §3402, over the appeal from a criminal judgment entered by a U.S. Magistrate Judge. CR 72-73, 79-80.

On December 23, 2019, the Honorable Troy L. Nunley U.S. District Judge denied the intermediate appeal and affirmed the judgment of the U.S. Magistrate Judge. ER 1-8 CR 91. On December 26, 2019, Mr. Stagno filed his notice of appeal from the district judge's order affirming the judgement and conviction. ER 24 CR 92 The appeal is timely under Fed. R. App. Proc. 4(b)(1)(A)(i).

## II. Bail Status

Mr. STAGNO was sentenced to three years of federal probation which runs until May 24, 2021. ER 9-10, CR 70.

## III. Statement of Issues Presented for Review

1. **Did the District Court err by failing to give the defense instructions which were a correct description of the law not covered by any other instructions?**

2. **Did the District Court err by denying Mr. Stagno's Rule 29 motion?**

## IV. Statement of the Case

### A. Statement of Facts

Prior to trial, Mr. Stagno's counsel filed a trial brief which advised the judge that he was raising a First Amendment defense to the disorderly conduct allegations in Count 2. CR 52. Mr. Stagno's trial brief argued that:

> the jury must be instructed on the parameters of the First Amendment defense . . . (and if) the Government is seeking to convict for "improper language" such as the use of the word "nigger" the jury must be instructed that the content of his speech may only be punished if the regulation is viewpoint neutral. Defense contends that the term "improper" must be construed as only applying to "fighting words" or "direct threats" which are not constitutionally protected free speech. Defense contends the jury must be instructed on what forms of speech are protected by the First Amendment and what is not.

ER 355-357 CR 52 at 2-3. Mr. Stagno also filed corresponding jury instructions. ER 55.

At trial, the Government's witnesses testified that Mr. Stagno committed disorderly conduct in violation of 38 U.S.C. §1.218(b)(11) by using improper

language including using the word “nigger” and making obscene gestures as well as yelling, shouting, and acting angry. ER 63-65, 314-316 CR 75 at 137-139, 76 at 164-165. Government witnesses testified that Mr. Stagno made several statements which were offensive. A Veterans Administration Registered Nurse Penny Workman testified that Mr. Stagno was extremely loud and was shouting obscenities, vulgarities and racial slurs. ER 64-66 CR 75 at 138-140. Nurse Workman testified that some patients at the clinic have post-traumatic stress disorder and that she had seen patients with psychiatric disorders yell and scream at the clinic. ER 78-83, CR 75 at 153-158. Another staff member, Janette LaSalle, testified that Mr. Stagno yelled, “f-ing cowards” and f--- the V.A.!” ER 238, CR 76 at 89. Ms. LaSalle testified that Mr. Stagno was upset that the majority of the staff was women, and said it was a “black versus white thing.” ER 232 CR 76 at 82. Another nurse, Jennifer Barker, testified that she also had training in dealing with disruptive patients. ER 194 CR 76 at 61. Nurse Barker testified that Mr. Stagno was yelling in the face of the security guard, and yelling at everyone. ER 154-155 CR 76 at 51-52. Nurse Barker testified that she heard Mr. Stagno “yelling racist things towards the clerk, but it was just verbal.” ER 197 CR 76 at 47. Sharay Brandon testified that she was working at the reception desk when Mr. Stagno approached the desk and asked for drop-in group counseling, but she could not help. ER 109 CR 75 at 183. She testified that she heard Mr. Stagno use “racist

language and obscenities." ER 167 CR 76 at 17. She specifically testified that Mr. Stagno said to her, "Are you a f—ing idiot. What do I have to do be a nigger to be served in this – this place." ER 114 CR 75 at 188. She testified he said "I bet you if I were a nigger I could get some help around here." ER 110, CR 75 at 184.

The Government's witness Nurse Barker testified on cross-examination that other patients had been just as loud as Mr. Stagno and had sometime used racial language. ER 208 CR 76 at 58. The testified that sometimes it does not disrupt operations. ER 208. Nurse Barker testified that she had previously worked as a nurse in a prison and in the Army for five years. ER 195 CR 76 at 45. Nurse Barker testified that she had training in handling disruptive patients. ER 211 CR 76 at 61. She described this training as including listening and validating their concern as well as making a show of force. ER 211 CR 76 at 61.

The Government's witness Janette La Salle testified that she and everyone in the facility had been given "disruptive behavior training" before working in that unit. ER 246 CR 76 at 96. She also testified she had served 24 years in the Navy as a hospital corpsman attached to the U.S. Marines. ER 223 CR 76 at 73.

At the close of the Government's case, Mr. Stagno's motion to dismiss both counts pursuant to Fed. R. Crim. P. 29 for insufficiency of the evidence was denied. ER 22-23 CR 76 at 108-109.

Mr. Stagno testified in his own defense. ER CR 76. Mr. Stragno testified that he was a veteran who went to the Stockton Veterans Affairs Clinic that day for a mental health evaluation as ordered by the court. ER 267-268 CR 76 at 117-118. Mr. Stagno denied using unusual noise, and obstructing the clinic, but admitted using the word "nigger" and to being loud and disrespectful. ER 284-286 CR 76 at 135-136. At trial Mr. Stagno denied creating a disturbance, but did admit that he used racist words including "nigger" a few times. ER 284-286 CR 76 at 135-136.

After the close of the evidence the judge ruled on Mr. Stagno's proposed jury instructions denying his request that the jury be instructed that:

> INSTRUCTION 7
> As used in 38 CFR §1.218(a)(5) "improper language" means language which by its very utterance, inflict injury or tends to incite immediate breach of the peace. However, the mere use of racist insults is not considered "improper language" under this ordinance unless accompanied by other language tending to incite a breach of the peace.
> In determining whether language is likely to lead to a breach of the peace the jury should consider whether the person hearing the language has been trained in responding to insulting language as part of the person's employment, such as a law enforcement officer or psychiatric facility staff member.

ER 20-22 CR 76 at 157-158, CR 58 at 10-11. The judge also denied Mr. Stagno's request that the jury be instructed on the Veteran's Adminstration's narrow interpretation of its own disorderly conduct regulation:

INSTRUCTION 7*(correctly #8)

> In order to convict a defendant for violating 38 CFR §1.218(a)(5) for interfering with the operations of a Veterans Facility, the Government must prove that the defendant's conduct involved (a substantial interference and was) more than merely engaging in a pattern of disruptive behavior.

ER 20-22 CR 76 at 157-158, CR 58 at 10-11.

In its closing, the Government argued that the jury could convict of disorderly conduct if it found the defendant used "loud, abusive or improper language that tended to disrupts normal operations of the clinic." ER 316 CR 76 at 166. The prosecutor expressly argued that the jury could convict based on evidence that Mr. Stagno used racial terms and phrases which escalated the situation and put people in fear of their safety which caused operations of the clinic not to be handled in the normal way. ER 316 CR 76 at 166. The Court's other instructions did not cover either topic. CR 62, CR 76 at 186-194.

The jury acquitted Mr. Stagno of assault, but convicted of disorderly conduct on a Veterans Affairs facility in violation of 38 C.F.R. §1.318. ER 14-16 CR 64-66.

**B. Procedural History**

The On September 7, 2017, Mr. Stagno was charged by information with one Class A misdemeanor count of forcibly assaulting a United States Government employee in violation of 18 U.S.C. §111 and one class B misdemeanor count of

disorderly conduct at a Veterans Administration facility in violation of 38 C.F.R. §1.218(a)(5) and (b)(11). ER 358 CR 10. Mr. Stagno pled not guilty and a jury trial was held on April 16, 2018. CR 75-76. Mr. Stagno requested two jury instructions to clarify the elements of the disorderly conduct charge, but the court denied the two instructions. ER 20-22 CR 76 at 157-158, CR 58 at 10-11.

At the close of the trial, the jury acquitted Mr. Stagno of assaulting the federal government official, but convicted him of disorderly conduct. ER 16 CR 65. The U.S. Magistrate Judge imposed a sentence of three years of probation. ER 10, CR70. Mr. Stagno filed a timely appeal from the judgment. CR 70-71. After Mr. Stagno's case was remanded, the Honorable Troy L. Nunley was assigned to handle the intermediate appeal pursuant to 18 U.S.C. §3402. On December 23, 2019, the District Judge denied the intermediate appeal and affirmed the judgment of the U.S. Magistrate Judge. ER 1 CR 91. On December 26, 2019, Mr. Stagno filed his notice of appeal from the district judge's order affirming the judgement and conviction. ER 24 CR 92.

## V. Summary of the Argument

Mr. Stagno was convicted by a jury of violating 38 C.F.R. §1.218(b)(11) after the jury had been instructed that they could convict if they all agreed that Mr. Stagno had "created a disturbance at the (Veteran's Affairs) clinic by doing at least one of the following: . . . 5. Use of loud, abusive, or otherwise improper language

that tends to disturb the normal operation of the clinic." ER 12, 303-304 CR 62 at 5, 76 at 188-189. The Court refused Mr. Stagno's request to define "abusive" or "improper" in the jury instructions pursuant to the applicable First Amendment standards. ER 20-22 CR 76 at 157-158, CR 58 at 10-11.

At trial Mr. Stagno denied creating a disturbance, but did admit that he used racist words including "nigger" a few times. Mr. Stagno's counsel sought a jury instruction which would instruct the jury that "improper language" means language which by its nature tends to incite a breach of the peace, and does not include the use of racist terms. Mr. Stagno further requested that the jury be instructed that in determining whether language is likely to lead to a breach of the peace, it should consider whether the person hearing the language is trained in responding to insulting language. The evidence at trial also showed that the insulting language was directed at Veteran's Psychiatric Clinic Staff who had been trained to deal with veterans who were suffering from post-traumatic stress disorder.

The district court denied Mr. Stagno's requests for defense theory instructions. This denial deprived Mr. Stagno of his constitutional right to have the jury instructed as to his defense theory, and permitted the jury to convict for his statements which were protected First Amendment speech criticizing government operations. The prosecution exploited this error by arguing to the jury that using

racist language was improper and disruptive in its closing. Mr. Stagno's conviction must be reversed.

Mr. Stagno further requested a jury instruction which defined interference in the disorderly conduct regulation by reference to the agency's narrowing construction of its own regulation. The district court erred in denying this instruction which permitted Mr. Stagno to be convicted for even a minimal disruption of agency business contrary to the intent of the agency.

The district judge also erred by denying Mr. Stagno's Rule 29 motion to dismiss for insufficiency of the evidence at the close of the Government's case in chief. The only evidence of improper use of language was the use of the word "nigger" in the constitutionally-protected context of criticism of government employees. The only evidence of disruption was the disruption caused by Mr. Stagno's use of improper language such as the use of the word "nigger" and his loud angry tone to people whose job it was to handle patients with psychiatric disorders. Since, the only evidence of improper language was Mr. Stagno's angry use of the word "nigger" in the context of his criticism of government mental health workers, this Court should review the denial of the Rule 29 as an applied challenge to the disorderly conduct statue. Since the undisputed evidence was that the improper language was not likely to create a breach of the peace, because the language was used in the context of criticizing government mental health workers

who had been trained to handle disruptive patients in similar circumstances. This Court should hold that the denial of Mr. Stagno's Rule 29 motion necessarily depended on an unconstitutional application of 38 C.F.R. §1.218 to his protected speed.

## VI. Argument

### A. The Trial Court erred in refusing Mr. Stagno's jury instructions

#### 1. Standard of Review

In considering whether a district court erred in failing to give a proposed defense theory instruction, this Court reviews *de novo* whether the instruction is supported by law, and it reviews for abuse of discretion whether it has some foundation in the evidence. *United States v. Anguiano-Morfin*, 713 F.3d 1208, 1209 (9th Cir. 2013). The district court's failure to give a defendant's requested instruction that is supported by law and has some foundation in the evidence warrants *per se* reversal, unless other instructions, in their entirety, adequately cover that defense theory." *Id*. (citations and internal quotation marks omitted). This Court review *de novo* whether other instructions adequately cover the defense theory. *Id.* This Court reviews questions of constitutional law *de novo*. *United States v. Ward*, 989 F.2d 1015, 1017 (9th Cir. 1992). This issue was raised by Mr. Stagno filing proposed jury instructions prior to and during trial, and by explaining the issue in his trial brief. ER 353-357 CR 52, 55 and 58. This issue was ruled on

in the jury instruction conference after the close of evidence. ER 20-22 CR 76 at 157-158, CR 58 at 10-11. The issue was raised and ruled on by the U.S. District Judge on intermediate appeal. ER 1-6, CR 91.

**2. The District Court erred by failing to give the defense instructions which were correct description of the law not covered by any other instruction.**

A criminal defendant has a constitutional right to have the jury instructed according to his theory of the case provided that the requested instruction "is supported by law and has some foundation in the evidence." *United States v. Marguet-Pillado*, 648 F.3d 1001, 1006 (9th Cir. 2011). A district court's failure to give a defendant's requested instruction that is supported by law and has some foundation in the evidence warrants per se reversal unless other instructions adequately cover the theory of the defense. *Marguet-Pillado, supra*, 648 F.3d at 1006.

Mr. Stagno's instruction no. 7 explained that the defendant could not be convicted under 38 C.F.R. §1.218(b)(11) for merely using racist language. The proposed instructions provided as follows:

INSTRUCTION 7

As used in 38 CFR §1.218(a)(5) "improper language" means language which by its very utterance, inflict injury or tends to incite immediate breach of the peace. However, the mere use of racist insults is not considered "improper language" under this ordinance unless accompanied by other language tending to incite a breach of the peace.

In determining whether language is likely to lead to a breach of the peace the jury should consider whether the person hearing the language has been trained in responding to insulting language as part of the person's employment, such as a law enforcement officer or psychiatric facility staff member.

ER 6, 327-328, CR 58, CR 76 at 157.

This proposed instruction was supported by law. In *Preminger v. Principi,* 422 F.3d 815, 824 (9th Cir. 2005), the Court held that Veterans Administration must be viewpoint neutral and reasonable in light of the forum. In *R.A.V. v. City of St. Paul*, 112 S.Ct. 2538 (1992), the Supreme Court struck down a disorderly conduct statute which prohibited racist fighting words for being non-viewpoint neutral. The Supreme Court has held that jury instructions which permit a jury to convict based on expressive conduct alone violate the First Amendment by creating an unacceptable risk of suppressing ideas. *Virginia v. Black*, 123 S.Ct. 1536, 1540, 538 U.S. 343, 346 (2003). In *Virginia v. Black,* the Supreme Court held that a statute which criminalized cross burning with intent to intimidate was constitutional, but that a jury instruction which permitted evidence of cross-

burning to create a presumption of intent to intimidate violated the First Amendment. Id. The Supreme Court explained that some cross-burning without intent to intimidate was actually protected free speech, so a defendant has a right to have the jury evaluate whether the cross-burned was protected speech or non-protected intimidation. In Mr. Stagno's case, he had the right to have the jury evaluate whether his offensive speech was fighting words as defined by the Supreme Court, particularly in the context of criticism of government officials.

In Mr. Stagno's case, the prosecution expressly argued to the jury that they could convict under any of the five prongs of the regulation, including just for using racist language under the "improper language" prong of the jury instruction. CR 76 at 164- 166. The prosecution argued:

> AUSA: Anderson: . . . Finally, and this is similar to the first one, but the use of loud, abusive or otherwise improper language that tended to disrupt normal operations of the clinic. You heard the words that the defendant was using that day. You herd the racial terms, phrases that were used. That is not what normally is said in a clinic at the VA, as you heard from Ms. Brandon. That type of language escalated the situation, put people in fear for their safety and caused the operations of the clinic to not be handles in a normal fashion.

ER CR 76 at 166. With this argument and the absence of Mr. Stagno's jury

instruction, the jury clearly was in a position to convict Mr. Stagno if it found he used the word “nigger” and they believed it was improper.

The second paragraph in Proposed Instruction 7 is based on Supreme Court precedent which holds that verbal criticism of government officials is protected speech and in most contexts cannot be punished unless it is fighting words. The Supreme Court explained that “[T]he First Amendment protects a significant amount of verbal criticism and challenge directed at police officers.” *City of Houston v. Hill,* 482 U.S. 451, 461, 107 S.Ct. 2502, 2505, 96 L.Ed.2d 398, 412 (1987). The First Amendment protects a significant amount of verbal criticism and challenge directed at police officers. “Speech is often provocative and challenging.... [But it] is nevertheless protected against censorship or punishment, unless shown likely to produce a clear and present danger of a serious substantive evil that rises far above public inconvenience, annoyance, or unrest.” *Terminiello v. Chicago,* 337 U.S. 1, 4, 69 S.Ct. 894, 895, 93 L.Ed. 1131 (1949). In *Lewis v. City of New Orleans,* 415 U.S. 130, 94 S.Ct. 970, 39 L.Ed.2d 214 (1974), for example, the appellant was found to have yelled obscenities and threats at an officer who had asked appellant's husband to produce his driver's license. The State may not punish a person for voicing an objection to a police officer where no “fighting words” are used. *Norwell v. Cincinnati*, 414 U.S. 14, 94 S.Ct. 187, 38 L.Ed.2d 170 (1973).

Although *City of Houston*, *Terminiello*, and *Norwell* involved verbal criticism of police, the First Amendment reasoning was not police specific in any of those cases, but was based on the fact that police training makes officers less likely to be provoked by words that might provoke a fight when said to others. In *City of Houston*, the Supreme Court explained:

> Moreover, in a concurring opinion in Lewis, Justice POWELL suggested that even the "fighting words" exception recognized in *Chaplinsky v. New Hampshire*, 315 U.S. 568, 62 S.Ct. 766, 86 L.Ed. 1031 (1942), might require a narrower application in cases involving words addressed to a police officer, because "a properly trained officer may reasonably be expected to 'exercise a higher degree of restraint' than the average citizen, and thus be less likely to respond belligerently to 'fighting words.'

*City of Houston, Tex. v. Hill*, 107 S.Ct. 2502, 2510, 482 U.S. 451, 462 (1987)

The evidence in this case showed that the staff at a Veterans Administration mental health clinic that had been trained to handle disruptive mental patients are expected to exhibit a higher degree of restraint when hearing words that might be considered fighting words in other contexts. The First Amendment requires that restrictions on verbal criticism of mental health staff be no stricter than the restrictions on verbal criticism of police, since the test is whether the government can prove that the words were likely to provoke a breach of the peace.

Courts have generally construed disorderly conduct as being not applicable

to disruptive criticism of police officers. *See Chicago v. Blakemore* (1973) 15 Ill App 3d 994, 305 NE2d 687; *see also H.N.P. v. State*, 854 So. 2d 630 (Ala. Crim. App. 2003); *Martinez v. District of Columbia*, 987 A.2d 1199 (D.C. 2010).

Given the First Amendment protections that apply to criticism of government officials, Mr. Stagno was entitled to have the jury as factfinder instructed on the First Amendment protections that applied to some of the offensive statements he made. By refusing the instruction, the trial court permitted the jury to convict Mr. Stagno based on constitutionally protected free speech in violation of the First Amendment.

Mr. Stagno also requested a jury instruction which was based on the Veterans Administration interpretations of its own disorderly conduct regulation which took the view that a moderate amount of disruptive behavior was permitted on Veterans Administration property. The trial court refused the following proposed instruction which had been mislabeled as No. 7:

> <u>INSTRUCTION NO. 7*(8)</u>
>
> In order to convict a defendant for violating 38 CFR §1.218(a)(5) for interfering with the operations of a Veterans Facility, the Government must prove that the defendant's conduct involved (a substantial interference and was) more than merely engaging in a pattern of disruptive behavior.

ER 328 CR 58 at 11. This instruction contained a correct description of the law,

because the Veterans Administration's description of its own reasoning behind the passing of 38 CFR §17.107 included commentary which interpreting 38 CFR §1.218(a)(5) as not reflecting current agency view of what conduct was unacceptable in a Veterans Administration facility. 75 FR 69881-01, 2010 WL 4603311(F.R.)(included herein at Addendum p.1).

In its November 16, 2010 final rule, the Veteran's Administration determined that arrest was not appropriate remedy for disruptive behavior, and that the agency's view was that patients exhibiting disruptive behavior did not need to be criminally punished unless non-criminal enforcement methods are exhausted. 75 FR 69881-01, 2010 WL 4603311(F.R.). In issuing 37 C.F.R. §17.106, the Veterans Administration commented on the outdated criminal enforcement of conduct by disruptive patients which was reflected in 38 C.F.R. §1.218(a)(5):

> V.A. regulations also prescribe rules of conduct for patients and other individuals who have access to VA facilities. See 38 CFR 1.218. In particular, § 1.218(a)(5) prohibits persons on V.A. property from causing a wide variety of disturbances, including creating "loud or unusual noise," obstructing public areas, and impeding or disrupting "the performance of official duties by Government employees." The sole enforcement mechanism provided by paragraph (a)(5) is "arrest and removal from the premises." 38 C.F.R. § 1.218(a)(5). VA has determined that arrest is generally not an appropriate remedy in a situation where the Department must balance the rights and needs of a disruptive patient against the need to protect other patients, guests, and staff. Some patients establish a pattern of disruptive behavior when interacting with V.A. personnel or when they are on V.A. property, and we believe that by understanding these patterns of behavior, planning for such behavior in advance, and setting safe

> conditions for care delivery, we can intervene in ways that can prevent subsequent episodes requiring removal and arrest.

*Responding to Disruptive Patients,* 75 FR 69881-01 (2010)(Addendum p. 1)

This commentary must be treated as the agency's interpretation of its own rule. Under *Bowles v. Seminole Rock & Sand Co.,* 325 U.S. 410, 414 (1945), an agency's interpretation of its own rule is binding on the courts; *see also Auer v. Robbins*, 519 U.S. 452, 462, 117 S.Ct. 905, 137 L.Ed.2d 79 (1997); *see also Stinson v. United States*, 508 U.S. 36, 38, 113 S.Ct. 1913, 1919 (1993). The Supreme Court has applied the *Auer/Seminole Rock* doctrine to an agency's interpretation of a regulation cast in such vague aspirational terms as to have no substantive content. *See Thomas Jefferson Univ. v. Shalala,* 512 U.S. 504, 512–513, 114 S.Ct. 2381, 129 L.Ed.2d 405 (1994).

Since the proposed instruction was a correct statement of the agency's interpretation of its own regulation, Mr. Stagno was entitled to have the jury instructed on the law as applied to his case. This instruction would have been relevant, because the jury could have found that Mr. Stagno's conduct was a pattern of disruptive behavior but not a substantial interference with the operation of the clinic which was established to deal with disruptive patients with psychiatric conditions.

Since the district court refused to give instructions that were correct statements of the law, this Court should vacate the conviction and remand the case to the district court for a new trial.

### B. The Trial Court's Erred in Denying Defendant's Rule 29 Motion to Dismiss, because the regulation was unconstitutional as applied to the conduct alleged in the Government's case in chief.

#### 1. Standard of Review

In evaluating sufficiency of the evidence under Rule 29, this Court reviews *de novo* whether a rational factfinder, viewing the evidence in the light most favorable to the prosecution, could have found the essential elements beyond a reasonable doubt. *United States v. Davis*, 506 Fed. App'x 612, 612 (9th Cir. 2013). Challenges to the constitutionality of a regulation are reviewed *de novo*. *United States v. Erickson*, 75 F.3d 470, 475 (9th Cir. 1996). This First Amendment issue was raised in Mr. Stagno's trial brief, and the sufficiency issue preserved by his motion to dismiss under Fed. R. Crim. P. 29. CR 52, 55 and 58, and 76 at 108.

#### 2. Argument

In denying Mr. Stagno's Rule 29 motion to dismiss for insufficiency of the evidence at the close of the prosecution's case, the district judge violated the First Amendment by permitting the jury to convict based on protected speech. "An ordinance which is not overbroad on its face may nevertheless be unconstitutional as applied if it is enforced against a protected activity." *Felix v. Young,* 536 F. 2d

1126, 1136 (6th Cir. 1976). An as-applied First Amendment challenge attacks the statute but only as applied to the defendant's conduct. *Board of Trustees of State of N.Y. v. Fox*, 492 U.S. 469, 482-84 (1989).

In order to rule on Mr. Stagno's Rule 29 motion, the district court had to consider whether there was sufficient evidence of disorderly conduct to convict not counting the substantial evidence of conduct which literally violated the regulation but was First Amendment protected speech. In Mr. Stagno case there was substantial evidence that Mr. Stagno used racist language in the context of criticizing Veteran's Administration staff. There was also substantial evidence that he engaged in loud criticism of Veterans Administration staff. However, in ruling on the Rule 29 motion the district court needed to disregard the evidence of criticism of government officials, because this would also be protected First Amendment speech under *Terminiello v. Chicago*, 337 U.S. 1, 4, 69 S.Ct. 894, 895, 93 L.Ed. 1131 (1949), and *Lewis v. City of New Orleans*, 415 U.S. 130, 94 S.Ct. 970, 39 L.Ed.2d 214 (1974). Although a Veterans Administration facility is not a public forum, the evidence admitted in the Government's case-in-chief showed that the Veterans Administration officials involved in this case had substantial training dealing with psychiatric patients who presented in distress. These officials are functionally identical to the police officers in *Lewis*, *supra*, because they were trained to handle insulting language and are not likely to get

into a fist fight with a psychiatric patient just because the patient uses a racist insult.

The only evidence of conduct which could have violated the regulation that was not protected speech was the volume of speech, which would be a content-neutral restriction. However, in this case the undisputed evidence showed this facility was where mental health patients needed to go to obtain treatment when they were in distress. Even viewing this evidence of loud speech in the light most favorable to the prosecution, the there was insufficient evidence to find beyond a reasonable doubt that the volume was unreasonably loud for that sort of clinic.

## VII. Conclusion

For the foregoing reasons, Mr. STAGNO requests that this Court vacate his conviction and/or remand this case to the district court for a new trial.

Dated: April 27, 2020

Respectfully submitted

HEATHER E. WILLIAMS
Federal Defender

*s/ Douglas J. Beevers*
DOUGLAS J. BEEVERS
Assistant Federal Defender

Attorneys for Defendant-Appellant
ERIC STAGNO

No. 19-10466

IN THE UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff-Appellee,<br><br>v.<br><br>ERIC STAGNO,<br><br>Defendant-Appellant. | D.C. No. 2:17-cr-167-TLN<br><br>Eastern District of California, Sacramento<br><br>CERTIFICATE OF COMPLIANCE |

BRIEF FORMAT CERTIFICATION
PURSUANT TO CIRCUIT RULE 32-1

Pursuant to Fed. R. App. P. 32(a)(7)(C) and Circuit Rule 32-1, I certify that the attached brief is proportionately spaced, has a typeface of 14 points and contains 5,207 words.

Dated: April 27, 2020

Respectfully submitted

HEATHER E. WILLIAMS
Federal Defender

*s/ Douglas J. Beevers*
DOUGLAS J. BEEVERS
Assistant Federal Defender

Attorneys for Defendant-Appellant
ERIC STAGNO

No. 19-10466

IN THE UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff-Appellee,<br><br>v.<br><br>ERIC STAGNO,<br><br>Defendant-Appellant. | D.C. No. 2:17-cr-00163-TLN<br><br>Eastern District of California, Sacramento<br><br>STATEMENT OF RELATED CASES |

Pursuant to Circuit Rule 28-2.6, Mr. STAGNO is not aware of any related cases.

Dated: April 27, 2020

Respectfully submitted

HEATHER E. WILLIAMS
Federal Defender

*s/ Douglas J. Beevers*
DOUGLAS J. BEEVERS
Assistant Federal Defender

Attorneys for Defendant-Appellant
ERIC STAGNO

No. 19-10466

IN THE UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff-Appellee,<br><br>v.<br><br>ERIC STAGNO,<br><br>Defendant-Appellant. | D.C. No. 2:17-cr-0163-TLN<br><br>Eastern District of California, Sacramento<br><br>CERTIFICATE OF SERVICE |

I hereby certify that on April 27, 2020, I electronically filed the Appellant's Opening Brief with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the appellate CM/ECF system.

I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the appellate CM/ECF system.

Dated: April 27, 2020

*s/ Megan Blumm*
Megan Blumm